THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:11-cv-00071-MR-DLH

| | |
|---|---|
| SYNOVUS BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| BOKKE IV L.L.C., JAMES ELEY, ) | |
| LAURA KELLY, JOHN KELLY, SR., ) | |
| MARLON NIEMAND, MARK P. KELLY,) | |
| JOHN G. RECKENBEIL, and SIMON ) | |
| MANNION, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Entry of Default Judgment against Defendants Bokke IV L.L.C. and Simon Mannion [Doc. 167].

## I. PROCEDURAL BACKGROUND

This is a deficiency action to recover on a promissory note executed by the Defendant Bokke IV L.L.C. ("Bokke IV") in favor of the Plaintiff Synovus Bank ("the Bank") related to the purchase of property in the Seven Falls Golf & River Club, a residential development in Henderson County,

North Carolina. [Doc. 1]. The promissory note was guaranteed by, among others, Defendant Simon Mannion ("Mannion").

On June 1, 2011, Defendants Bokke IV and Mannion answered the Plaintiff's Complaint. [Doc. 11]. Defendants' pleading included counterclaims against the Bank as well as third-party claims against Synovus Financial Corp. ("Financial Corp."), the developer of Seven Falls, and related entities.

Subsequently, the Bank and Financial Corp. filed numerous motions challenging the counterclaims and third-party claims against them. [Docs. 32, 39, 43]. On August 15, 2012, the Court entered a Memorandum of Decision and Order granting certain motions and denying others. [Doc. 69]. In particular, the Court dismissed all third-party claims against Financial Corp., dismissed all counterclaims against the Bank by Defendant Mannion, and dismissed all counterclaims against the Bank by Bokke IV except for Bokke IV's counterclaim under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701, et seq. ("ILSA").

On March 12, 2013, counsel moved for leave to withdraw from representing Bokke IV and Mannion. [Docs. 84, 85]. The motion with respect to Mannion was allowed on March 19, 2013. [Doc. 90]. The

motion with respect to Bokke IV was denied initially [Doc. 89], but later allowed [Doc. 93].

On July 1, 2013, the Bank moved for the entry of an Order striking the answers of Bokke IV, Mannion, and other Defendants. [Doc. 98]. On September 30, 2013, in compliance with the deadlines set forth in the Court's Pretrial Order and Case Management Plan (as amended), the Bank filed a Motion for Summary Judgment with respect to Bokke IV, Mannion, and others. [Doc. 123].

On October 1, 2013, the Court entered an Order addressing various Motions. [Doc. 125]. In that Order, the Court allowed the Bank's Motion to Strike and for Entry of Default as to Bokke IV and Mannion, and struck the Answers of those Defendants. [Id.]. An Entry of Default was made by the Clerk of Court as to Bokke IV and Mannion later that day. [Doc. 126].

On March 5, 2014, the Bank filed the present motion seeking the entry of a default judgment against Defendants Bokke IV and Mannion. [Doc. 167].

This matter is now ripe for determination.

## II. STANDARD OF REVIEW

Rule 55(b) of the Federal Rules of Civil Procedure provides that the Clerk may enter a default judgment if the plaintiff's claim is "for a sum

certain or a sum that can be made certain by computation." In all other cases, the plaintiff must apply to the Court for a default judgment. Fed. R. Civ. P. 55(b)(2). The Court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter necessary to enter or effectuate judgment. Id. The Court may forego holding a formal evidentiary hearing, however, if the record sufficiently supports the amount of damages requested. See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc., No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009).

In reviewing a motion for default judgment, the Court must take all well-pleaded factual allegations in the complaint regarding the defaulted defendant's liability as true. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) ("'The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'") (citation omitted). The Court must then consider whether the unchallenged facts constitute a legitimate cause of action. Id. "Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."

GlobalSantaFe Corp. v. Globalsantafe.com, 250 F.Supp.2d 610, 612 n.3 (E.D. Va. 2003).

III. FACTUAL BACKGROUND

As noted above, the answers of Bokke IV L.L.C and Simon Mannion were stricken in this action, and default was duly entered against them. Accordingly, the following facts, as alleged by the Bank, are deemed admitted. In August 2007, Bokke IV borrowed money from the Bank to finance the purchase of an undeveloped lot (Lot 33) in the Seven Falls Golf & River Club ("Seven Falls") in Henderson County, North Carolina.[1] On August 13, 2007, Bokke IV executed a Universal Note in the amount of $300,000.00 made payable to the Bank. The Universal Note was signed by Defendant James Eley in his capacity as a member of Bokke IV. [Universal Note, Doc. 1-1; Bennett Aff., Doc. 124-1 at ¶ 6]. The Note was secured by a Deed of Trust on Lot 33, the undeveloped lot in Seven Falls that was purchased by Bokke IV with the funds it obtained from the Bank. [Deed of Trust, Doc. 1-9; Bennett Aff., Doc. 124-1 at ¶ 8].

On or about August 13, 2007, Defendant Mannion and the other Individual Defendants, all members of Bokke IV, each executed and

---

[1] Bokke IV entered into the loan agreement with National Bank of South Carolina ("NBSC"). Synovus Bank is the successor-in-interest to NBSC. [See Bennett Aff., Doc. 124-1 at ¶ 3].

delivered a Guaranty to the Bank.  By these Guaranties, the Individual Defendants promised to pay the Universal Note according to its terms if Bokke IV failed to do so.  [Guaranties, Docs. 1-2 through 1-8; Bennett Aff., Doc. 124-1 at ¶ 7].

On or about October 9, 2009, Bokke IV refinanced the Universal Note, and, in connection therewith, executed and delivered a Renewal Note.  [Renewal Note, Doc. 1-10; Bennett Aff., Doc. 124-1 at ¶ 9].  Bokke IV failed to pay sums due under the Renewal Note, and, despite demand, neither Bokke IV nor the individual Defendants cured Bokke IV's default. [See Bennett Aff., Doc. 124-1 at ¶¶ 11-14].  Accordingly, on August 17, 2010, Lot 33 was sold at a foreclosure sale held in Henderson County.  The proceeds from the foreclosure sale amounted to $47,985.29.  [Id. at ¶ 15].

After crediting the amount due under the Bokke IV Renewal Note with the proceeds from the foreclosure sale, the Bank brought this action seeking to recover the balance due and owing under the Renewal Note and Guaranties as of March 25, 2011, plus interest.  [Complaint, Doc. 1 at ¶ 31].

## IV. ANALYSIS

Under South Carolina law[2], "[a] promissory note is an unconditional obligation, sufficient in itself to support a cause of action." Ray v. South Carolina Nat'l Bank, Inc., 314 S.E.2d 359, 361 (S.C. 1984). Where a note is clear, unambiguous, and properly executed, it should be enforced. Id.

The Bank has established that a true and correct copy of the Renewal Note has been presented, that Bokke IV executed the Renewal Note through its member, James Eley, and that Bokke IV is in default under that Note. [See Bennett Aff., Doc. 124-1 at ¶¶ 6, 9, 11-14; see also Bokke IV 30(b)(6) Dep., Doc. 124-2 at 33]. Moreover, the Bank has established that it has possession of the Renewal Note, that the Bank is the payee on that Note, and that the Renewal Note has not been endorsed, transferred or assigned by it. [Bennett Aff., Doc. 124-1 at ¶¶ 3, 6, 16, 17]. Accordingly, the Bank has established its right to recover amounts due from Bokke IV pursuant to the terms of the Renewal Note.

---

[2] The Renewal Note provides that it is to be governed by South Carolina law. [See Doc. 1-10 at 3 ("Applicable Law" provision)]. A federal court sitting in diversity applies the choice-of-law principles of its forum state. See Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007). A North Carolina court would enforce the contractual choice-of-law provision in the Renewal Note. See Synovus Bank v. Coleman, 887 F. Supp. 2d 659, 668 (W.D.N.C. 2012) (Reidinger, J.). Thus, South Carolina law applies to the Bank's claim to recover against Bokke IV under the Renewal Note.

Additionally, the Bank has established its Right to recover against Defendant Mannion. The liability of Defendant Mannion for amounts due under the Bokke IV Renewal Note is premised on the Guaranty he signed.[3] That Guaranty provides, in pertinent part, as follows:

> For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce National Bank of South Carolina (herein, with its participants, successors and assigns, called 'Lender'), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of Bokke IV, LLC (herein called 'Borrower') or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows: . . . .

[Mannion Guaranty, Doc. 1-8].

---

[3] Mannion's Guaranty provides that "[t]his guaranty shall be governed by the laws of the State in which it is executed." [Doc. 1-8 at ¶ 13]. The Court, however, is unable to determine with certainty, either from the Guaranty or the record in general, where the Mannion Guaranty was "executed" for application of this contractual choice-of-law provision. The Bank contends that, in light of the record before the Court, "it is fairly safe to assume based on the facts in the record that the relevant factual inquiry would lead to either South Carolina or North Carolina law." [Doc. 124 at 19]. The Court will therefore limit its analysis to the law of North Carolina and South Carolina. Whether the Court applies North Carolina or South Carolina law in this case, however, is not critical, as the laws of North Carolina and South Carolina are essentially the same – both states enforce contractual guaranty obligations according to their terms. See Crafton v. Brown, 346 S.C. 347, 550 S.E.2d 904 (S.C. Ct. App. 2001); Gillespie v. DeWitt, 53 N.C. App. 252, 280 S.E.2d 736 (1981).

By its express terms, the Guaranty signed by Defendant Mannion in connection with Bokke IV's execution of the original Universal Note extends to and guarantees the Renewal Note as well:

> A. . . . the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: ACCT# **XXXX**3250 NOTE# 1 *and any extensions, renewals or replacements thereof* (hereinafter referred to as the 'indebtedness'). . . . .

[Id. (emphasis added)]. Accordingly, Defendant Mannion is liable for the amounts due under the Bokke IV Renewal Note, according to the plain terms of his Guaranty.

The Court now turns to the issue of damages. In support of its request for damages, the Plaintiff has presented the Affidavit of Jerald Slaughter, a Managed Assets Officer for the Bank, which affidavit establishes the amount still owing on the Note, including interest. Based on the evidence presented, the Court concludes that the Plaintiff is entitled to recover judgment against the Defendants Bokke IV L.L.C. and Simon Mannion, jointly and severally, in the amount of $223,905.63, with interest

continuing to accrue on the outstanding principal balance ($183,527.19) at a rate of $22.62 per day beginning on February 28, 2014.[4]

Finally, because default has been entered against Defendants Bokke IV and Mannion, any and all counterclaims and third-party claims asserted by these Defendants are hereby dismissed.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Entry of Default Judgment against Defendants Bokke IV L.L.C. and Simon Mannion [Doc. 167] is **GRANTED**, and the Plaintiff is hereby awarded damages against the Defendants Bokke IV L.L.C. and Simon Mannion, jointly and severally, in the amount of Two Hundred and Twenty-Three Thousand Nine Hundred and Five Dollars and Sixty-Three Cents ($223,905.63), with interest continuing to accrue on the outstanding principal balance ($183,527.19) at a rate of Twenty-Two Dollars and Sixty-Two Cents $22.62 per day from and after February 28, 2014, until paid in full.

---

[4] While the Guaranty provides for the recovery attorney's fees and costs incurred in bringing this action, the Bank does not request an award of attorneys' fees or costs in relation to the entry of default judgment. [See Doc. 168 at 4].

**IT IS FURTHER ORDERED** that all counterclaims and third-party claims asserted by Defendants Bokke IV, L.L.C. and Simon Mannion are hereby **DISMISSED**.

The Clerk of Court is directed to enter a judgment in accordance with this Order.

**IT IS SO ORDERED.**

Signed: March 8, 2014

Martin Reidinger
United States District Judge